IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PATHWAY IP LLC,<br><br>    Plaintiff,<br><br>v.<br><br>The Individuals, Corporations, Limited Liability Companies, Partnerships, and Unincorporated Associations Identified on the Attached Schedule A,<br><br>    Defendants. | Case No. 1:25-cv-04842<br><br>JURY TRIAL DEMANDED |

**VERIFIED COMPLAINT**

  Plaintiff Pathway IP LLC (referred to herein as "Plaintiff") hereby brings the present action against all Individuals, Corporations, Limited Liability Companies, Partnerships, and Unincorporated Associates Identified on Schedule A (collectively, "Defendants"), attached hereto, as follows:

  **I. JURISDICTION AND VENUE**

  1. This Court has original subject matter jurisdiction over Plaintiff's claims pursuant to the provisions of the Patent Act, 35 U.S.C. § 1 et seq., 28 U.S.C. § 1338(a)-(b) (exclusive patent claim jurisdiction), and 28 U.S.C. § 1331 (original federal question jurisdiction), and seeks injunctive relief, monetary damages, and other appropriate relief against the Defendants identified in Schedule A.

  2. In addition, pursuant to Rule 64 of the Federal Rules of Civil Procedure and 735 ILCS 5/4-101(1), (5), and (8), Plaintiff seeks a writ of prejudgment attachment to secure Defendants' assets—including but not limited to funds held in marketplace accounts and registered

1

trademarks used in connection with the sale of infringing products—to ensure satisfaction of any final judgment in this matter.

3. Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendants because Defendants structure their business activities so as to target consumers in the United States, including Illinois, through at least the fully interactive e-commerce stores operating under the aliases identified on Schedule A attached hereto (the "Seller Aliases"). Specifically, Defendants have targeted sales to Illinois residents by setting up and operating e-commerce stores that target United States consumers, offer shipping to the United States, including Illinois, accept payment in U.S. dollars and, on information and belief, sell products which infringe Plaintiff's patented inventions, as described below, (collectively, the "Unauthorized Products") to residents of Illinois. Each of the Defendants is committing tortious acts in Illinois, is engaging in interstate commerce, and has wrongfully caused Plaintiff substantial injury in the state of Illinois.

## II. INTRODUCTION

4. Plaintiff filed this case to prevent e-commerce store operators who infringe upon Plaintiff's patented invention from further selling and/or offering for sale Unauthorized Products. The existence of the Unauthorized Products has hampered Plaintiff's ability to enter and expand its footprint in the market, a market within which Plaintiff should have exclusionary rights under its patent.

5. Defendants create e-commerce stores under one or more Seller Aliases and then advertise, offer for sale, and/or sell Unauthorized Products to unknowing consumers. E-commerce stores operating under the Seller Aliases share identifiers, such as design elements and similarities of the Unauthorized Products offered for sale, establishing that a logical relationship exists

2

between them, and that Defendants' infringing operation arises out of the same transaction, occurrence, or series of transactions or occurrences. Defendants take advantage of a set of circumstances, including the anonymity and mass reach afforded by the Internet and the cover afforded by international borders, to violate Plaintiff's intellectual property rights with impunity. Defendants attempt to avoid liability by operating under one or more Seller Aliases to conceal their identities, locations, and the full scope and interworking of their infringing operation. Plaintiff is forced to file this action to combat Defendants' infringement of its patented invention, as well as to protect consumers from purchasing Unauthorized Products over the internet. Plaintiff has been, and continues to be, irreparably damaged through loss of market share (including the inability to generate and expand market share) and erosion of Plaintiff's patent rights because of Defendants' actions and therefore seeks injunctive and monetary relief.

### III. ALLEGATIONS SUPPORTING JOINDER

6. Joinder of Defendants identified in Schedule A is proper under 35 U.S.C. § 299(a) and Fed. R. Civ. P. 20(a) because Plaintiff's claims arise from the same series of transactions or occurrences, namely, the unauthorized manufacture, importation, offering for sale, and sale of substantially identical ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Each Defendant is alleged to have marketed, sold, or distributed the same or materially indistinguishable infringing product, often using coordinated or near-identical online storefronts, product listings, descriptions, and advertising language.

7. The products at issue—each identified in the spreadsheet of ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮—share the same or equivalent physical structure, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *See* **Exhibit 6**.
Many of these products also exhibit identical, or at a minimum substantially identical, packaging


and share the same SKU prefix "▇," where the number following the prefix corresponds to the ▇▇▇▇ in the product. This consistent labeling convention strongly suggests that the products originate from the same or closely related upstream manufacturers and are distributed through coordinated supply chains. Plaintiff has independently purchased each accused product and verified that the infringing features are functionally and structurally indistinguishable across sellers. In addition, the integrated circuits used in each product are identical in arrangement, component placement, and overall circuit layout, further confirming that the products are materially the same and support proper joinder.[1]

---

[1] Additional ASINs listed in Schedule A correspond to the same or substantially identical products, differing only in ▇▇▇▇.



8. Similarly here, Defendants' alleged infringing conduct raises common questions of fact and law, including:

- whether the ▮▮▮▮▮▮ infringe the same asserted claims of the patent;
- whether the accused products were sold with knowledge of Plaintiff's patent;
- whether the technical operation of the ▮▮▮▮▮▮ satisfies the claim limitations;
- whether Defendants are profiting from infringing or deceptively similar versions of the patented product; and
- the appropriate measure of damages arising from the infringing sales.

9. Additionally, joinder of Defendants 9 through 12 is proper because they are the registered trademark owners whose marks appear on the infringing products sold by other Defendants listed in Schedule A. These trademark holders have authorized the use of their marks through licensing or distribution arrangements, thereby enabling, encouraging, and materially contributing to the sale of infringing products that embody the patented invention. As such, Defendants 9–12 are indirect infringers who participate in the same transaction or occurrence as the seller Defendants, and their conduct gives rise to common questions of law and fact relating to both liability and damages. Accordingly, they are properly joined under Fed. R. Civ. P. 20(a) and 35 U.S.C. § 299(a).

10. Requiring separate lawsuits for each Defendant—including both the sellers of infringing products and the registered trademark owners whose marks appear on those products—

would lead to duplicative proceedings involving the same factual and legal issues. This would unnecessarily burden both the Court and the parties and create a significant risk of inconsistent judgments. Joinder in this context promotes judicial efficiency, ensures consistent adjudication, and is particularly appropriate in patent enforcement actions, where defendants—including brand owners, licensees, and sellers—frequently operate anonymously or in coordination across digital marketplaces. Because the trademark owners have enabled, authorized, or materially contributed to the sale of the infringing products, their involvement arises from the same transaction or occurrence and presents overlapping legal and factual questions suitable for resolution in a unified proceeding.

11. Accordingly, joinder of the Defendants in this action is proper under 35 U.S.C. § 299(a), fully supported by the weight of legal authority in this jurisdiction, and warranted based on the substantial identity of products, coordinated conduct, and overlapping questions of law and fact that unify all claims in this case.

### III. THE PARTIES

12. Plaintiff, Pathway IP LLC, is a Delaware Limited Liability Company registered to do business in the State of New York with its principal place of business at 400 Rella Blvd, #156, Montebello, NY 10901.

13. Plaintiff Pathway IP LLC is the owner of all right, title, and interest in US Patent No. 8,500,293 ("Plaintiff's Patent"). A true and correct copy of Plaintiff's Patent is attached hereto as **Exhibit 1**.

14. Plaintiff's Patent was issued on August 6, 2013. *See* **Exhibit 1**.

15. Plaintiff's Patent was and is valid and enforceable at all times relevant to this action and is entitled to a presumption of validity under 35. U.S.C. § 282.

16. Plaintiff's Patent covers ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████.

17. On information and belief, Defendants, either individually or jointly, operate one or more e-commerce stores under the Seller Aliases listed in Schedule A attached hereto. Tactics used by Defendants to conceal their identities and the full scope of their operation make it virtually impossible for Plaintiff to learn Defendants' true identities and the exact interworking of their infringing network. If Defendants provide additional credible information regarding their identities, Plaintiff will take appropriate steps to amend the Complaint.

IV. DEFENDANTS' UNLAWFUL CONDUCT

18. The success of the invention claimed in Plaintiff's Patent has resulted in significant infringement of Plaintiff's Patent. The significant infringement has hampered Plaintiff's ability to generate and expand market share for its ██████ line of products. Because of this, Plaintiff has implemented an anti-infringement program that involves investigating suspicious websites and online marketplace listings identified in proactive Internet sweeps. Recently, Plaintiff has identified many fully interactive e-commerce stores offering Unauthorized Products on online marketplace platforms like Amazon.com, Inc. ("Amazon"). True and correct copies of the screenshot printouts showing the active e-commerce stores operating under the Seller Aliases reviewed are attached as **Exhibit 2**.

19. The Seller Aliases target consumers in this Judicial District and throughout the United States. According to a report prepared for The Buy Safe America Coalition, most counterfeit products now come through international mail and express courier services (as opposed

7

to containers) due to increased sales from offshore online infringers. *The Counterfeit Silk Road: Impact of Counterfeit Consumer Products Smuggled Into the United States*, prepared by John Dunham & Associates (**Exhibit 3**). While the report set forth in Exhibit 3 refers to trademark counterfeiting, the same tactic is used by infringers of other intellectual property rights; including, as here, patent infringers who sell direct to consumers or bulk ship products to third party marketplaces.

20. As described in the report attached as **Exhibit 3**, infringing products sold by offshore online counterfeiters do not enter normal retail distribution channels, and, as a result, the U.S. economy lost an estimated 300,000 or more full-time jobs in the wholesale and retail sectors alone in 2020. *Id*. When accounting for lost jobs from suppliers that would serve these retail and wholesale establishments, and the lost jobs that would have been induced by employees re-spending their wages in the economy, the total economic impact resulting from the sale of counterfeit products was estimated to cost the United States economy over 650,000 full-time jobs that would have paid over $33.6 billion in wages and benefits. *Id*. Additionally, it is estimated that the importation of counterfeit goods costs the United States government nearly $7.2 billion in personal and business tax revenues in the same period. *Id*. Again, these statistics are similarly applicable to other types of infringement, including patent infringement.

21. Online marketplace platforms like those used by Defendants do not adequately subject new sellers to verification and confirmation of their identities, allowing infringers to "routinely use false or inaccurate names and addresses when registering with these e-commerce platforms." **Exhibit 4**, Daniel C.K. Chow, *Alibaba, Amazon, and Counterfeiting in the Age of the Internet*, 40 NW. J. INT'L L. & BUS. 157, 186 (2020); see also report on "*Combating Trafficking in Counterfeit and Pirated Goods*" prepared by the U.S. Department of Homeland Security's

Office of Strategy, Policy, and Plans (Jan. 24, 2020), attached as **Exhibit 5**, and finding that on "at least some e-commerce platforms, little identifying information is necessary for a counterfeiter to begin selling" and that "[t]he ability to rapidly proliferate third-party online marketplaces greatly complicates enforcement efforts, especially for intellectual property rights holders." Infringers hedge against the risk of being caught and having their websites taken down from an e-commerce platform by establishing multiple virtual storefronts. **Exhibit 5** at p. 22. Since platforms generally do not require a seller on a third-party marketplace to identify the underlying business entity, infringers can have many different profiles that can appear unrelated even though they are commonly owned and operated. **Exhibit 5** at p. 39. Further, "[e]-commerce platforms create bureaucratic or technical hurdles in helping brand owners to locate or identify sources of counterfeits and counterfeiters." **Exhibit 4** at 186-187. Specifically, brand owners are forced to "suffer through a long and convoluted notice and takedown procedure only [for the counterfeit seller] to reappear under a new false name and address in short order." *Id*. at p. 161.

22. The very same concerns regarding anonymity, multi-storefront infringers, and slow and ineffective notice and takedown marketplace procedures affect Plaintiff's enforcement efforts when trying to assert its own patent rights.

23. Defendants have targeted sales to Illinois residents by setting up and operating e-commerce stores that target United States consumers using one or more Seller Aliases, offer shipping to the United States, including Illinois, accept payment in U.S. dollars and, on information and belief, sell and/or offer for sale Unauthorized Products to residents of Illinois.

24. Defendants concurrently employ and benefit from similar advertising and marketing strategies. For example, some Defendants facilitate sales by designing the e-commerce stores operating under the Seller Aliases so that they appear to unknowing consumers to be

authorized online retailers, outlet stores, or wholesalers. E-commerce stores operating under the Seller Aliases appear sophisticated and accept payment in U.S. dollars in multiple ways, including via credit cards, Alipay, Amazon Pay, and/or PayPal. E-commerce stores operating under the Seller Aliases often include content and images that make it very difficult for consumers to distinguish their stores from an authorized retailer. Plaintiff has not licensed or authorized Defendants use of Plaintiff's Patents, and none of the Defendants are authorized retailers of Plaintiff's Products.

25. E-commerce store operators like Defendants commonly engage in fraudulent conduct when registering the Seller Aliases by providing false, misleading and/or incomplete information to e-commerce platforms to prevent discovery of their true identities and the scope of their e-commerce operation.

26. E-commerce store operators like Defendants regularly register or acquire new seller aliases for the purpose of offering for sale and selling Unauthorized Products. Such seller alias registration patterns are one of many common tactics used by e-commerce store operators like Defendants to conceal their identities and the full scope and interworking of their infringing operation, and to avoid being shut down.

27. Even though Defendants operate under multiple fictitious aliases, the e-commerce stores operating under the Seller Aliases often share unique identifiers, such as templates with common design elements that intentionally omit contact information or other information for identifying Defendants or other Seller Aliases they operate or use. E-commerce stores operating under the Seller Aliases include other common features, such as registration patterns, accepted payment methods, check-out methods, keywords, advertising tactics, similarities in price and quantities, the same incorrect grammar and misspellings, and/or the use of the same text and images. Additionally, Unauthorized Products for sale by the Seller Aliases bear similar

10

irregularities and indicia of being infringing to one another, suggesting that the Unauthorized Products were manufactured by and come from a common source and that Defendants are interrelated.

28. E-commerce store operators like Defendants frequently communicate through QQ.com chat rooms and utilize websites such as sellerdefense.cn, which offer tactics for managing multiple online marketplace accounts and evading detection by intellectual property owners. These platforms not only provide technical guidance on avoiding enforcement actions but also actively monitor newly filed intellectual property lawsuits in the United States. Upon detection, they alert store operators of impending enforcement by publishing blog posts or bulletins and recommending that operators immediately cease infringing activities, liquidate financial accounts, and switch payment processors to avoid asset restraint. Notably, Chinese law firms and service agencies play an active role in this process—monitoring U.S. filing systems in real time and using that information to solicit business from accused infringers. As a result, this ecosystem has evolved into a lucrative industry—not only for the infringing sellers, but also for the service providers who profit from helping them exploit intellectual property loopholes and avoid accountability.

29. Infringers such as Defendants typically operate under multiple seller aliases and payment accounts so that they can continue operation despite Plaintiff's enforcement. E-commerce store operators like Defendants maintain offshore bank accounts and regularly move funds from their financial accounts to offshore accounts outside the jurisdiction of this Court to avoid payment of any monetary judgment awarded to plaintiffs.

30. Defendants are working in active concert to knowingly and willfully manufacture, import, distribute, offer for sale, and sell Unauthorized Products in the same transaction, occurrence, or series of transactions or occurrences. Defendants, without any authorization or

license from Plaintiff have, jointly and severally, knowingly and willfully infringed Plaintiff's Patents in connection with the use and/or manufacturing of Unauthorized Products and distribution, offering for sale, and sale of Unauthorized Products into the United States and Illinois over the Internet.

31. Defendants' unauthorized use and/or manufacturing of the invention claimed in Plaintiff's Patents in connection with the distribution, offering for sale, and sale of Unauthorized Products, including the sale of Unauthorized Products into the United States, including Illinois, is likely to cause, and has caused, loss of market share and erosion of Plaintiff's patent rights is irreparably harming Plaintiff.

## COUNT I
## PATENT INFRINGEMENT (15 U.S.C. § 271) – PLAINTIFF'S PATENT

32. Plaintiff hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

33. As shown, Defendants are working in active concert to knowingly and willfully manufacture, import, distribute, offer for sale, and sell infringing products in the same transaction, occurrence, or series of transactions or occurrences. Defendants, without any authorization or license from Plaintiff, have jointly and severally, knowingly and willfully offered for sale, sold, and/or imported into the United States for subsequent resale or use the same product that infringes directly and/or indirectly Plaintiff's Patent.

34. As shown in the exemplary claim charts attached hereto as **Exhibit 6**, the products being sold by each Defendant infringes at least Claim 1 of Plaintiff's Patent. The claim charts of **Exhibit 6** are illustrative only and are made without the benefit of discovery or claim construction, and Plaintiff reserves the right to modify its infringement theory as appropriate as the case

proceeds. Although the claim chart only includes Claim 1, Plaintiff alleges that Defendants have infringed each and every claim of Plaintiff's Patent.

35. Specifically, Defendants have infringed and continue to infringe each and every claim of Plaintiff's Patent by making, using, importing, selling, and/or offering to sell their infringing products in the United States without authorization or license from Plaintiff. In addition to directly infringing, Defendants have also indirectly infringed Plaintiff's Patent by actively inducing or contributing to infringement by others, including consumers and downstream sellers, who purchase, use, or resell the infringing products in violation of Plaintiff's exclusive rights. This includes trademark registration holders who license their marks to third parties engaged in the sale or promotion of the infringing products. These trademark holders knowingly aid and encourage the sale of infringing goods by granting licensing rights that give legitimacy and visibility to products incorporating patented features without Plaintiff's consent.

36. Defendants have profited by their infringement of Plaintiff's Patent, and Plaintiff has suffered actual harm as a result of Defendants' infringement.

37. As a direct and proximate result of Defendants' infringement, Plaintiff has suffered irreparable harm and monetary and other damages in an amount to be determined. Defendants' infringement of Plaintiff's Patent in connection with the offering to sell, selling, or importing of products that infringe Plaintiff's Patent, including such acts into the State of Illinois, is irreparably harming Plaintiff. Defendants' wrongful conduct has caused Plaintiff to suffer irreparable harm resulting from the loss of its lawful patent rights to exclude others from making, using, selling, offering for sale, and importing the patented inventions as well as the lost sales and loss of repeat sales stemming from the infringing acts.

38. Defendants' infringement has been and continues to be willful. Accordingly, Plaintiff is entitled to treble damages under 35 U.S.C. § 284 and this is an exceptional case under 35 U.S.C. § 285.

39. Plaintiff is entitled to injunctive relief pursuant to 35 U.S.C. § 283. Unless Defendants are preliminarily and permanently enjoined by this Court from continuing their infringement of Plaintiff's Patent, Plaintiff will continue to suffer additional irreparable harm, including loss of market share and erosion of patent rights.

40. Plaintiff is entitled to recover damages adequate to compensate for the infringement, pursuant to 35 U.S.C. § 284, in no event less than a reasonable royalty.

## COUNT II
## UNFAIR COMPETITION (15 U.S.C. §1125(a))

41. Plaintiffs hereby re-allege and incorporate by reference the allegations set forth in the preceding paragraphs.

42. Despite Plaintiff having valid and enforceable patents, which were embodied in Plaintiff's Products, and sold to consumers in what should have been an otherwise exclusive market, Defendants have developed, manufactured, imported, advertised, and/or sold Unauthorized Products that make advertising claims in a manner likely to confuse consumers into believing it is associated with or authorized by Plaintiff. For example, Defendants make advertising claims such as:

a. ██████████████████████████████████████████████████████
████████████████████████████████████;

b. ██████████████████████████████████████████████; and

c. █████████████████████████████████████.

43. Such advertising claims, which read on Claim 1 of Plaintiff's Patent, implicitly make affiliation with Plaintiff, when they are not. Such false affiliation with Plaintiff have prevented Plaintiff from generating and expanding its market share in what should have been an exclusive field—creating express and implied misrepresentation that Unauthorized Products were created, authorized, or approved by Plaintiff, allowing Defendants to profit from the goodwill, time, research, and development of the invention as embodied in Plaintiff's Patents and in Plaintiff's embodying Products, while causing Plaintiff irreparable and immeasurable injury.

44. On information and belief, Defendants have offered to sell and knowingly sold Unauthorized Products with the understanding that, as foreign entities, any enforcement efforts by Plaintiff would be difficult as many countries, including and especially China, make enforcement efforts of foreign IP difficult and collection of any judgments highly improbable.

45. On information and belief, to the extent enforcement efforts are made against Defendants, Defendants will merely ignore the efforts if they are permitted to move any assets out of their marketplace accounts and can easily create new accounts for online marketplaces to sell Unauthorized Products – with little recourse available to Plaintiff.

46. Defendants have engaged in a pattern of unfair competition by operating storefronts in e-commerce marketplaces with the intent to defraud customers and evade legal and financial responsibilities.

47. Specifically, Defendants have been observed engaging in the following unlawful activities:

   a. Exploitation of Marketplace Accounts: Defendants systematically divert funds from marketplace accounts into personal or untraceable accounts, thereby unlawfully extracting financial resources from the marketplace.

15

    b. Unlawful Storefront Closure: Upon being detected or facing financial scrutiny, Defendants promptly close their storefronts to avoid further investigation or legal consequences.

    c. Reopening Under New Entities: after closing the storefronts, Defendants frequently reopen new business entities or storefronts under different names, thereby circumventing legal and financial accountability and continuing their infringing activities.

48. Collectively, these actions constitute unfair competition as Defendants mislead consumers, undermine fair market practices, and harm both the integrity of the marketplace and legitimate competitors.

49. Defendants' acts, as described herein, violate Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), in that Defendants' sale and/or offer of sale of products, with false affiliation with Plaintiff and Plaintiff's Patent, constitutes unfair competition.

50. Plaintiff has no adequate remedy at law and, if the Defendants' activities are not enjoined, Plaintiffs will continue to suffer irreparable harm and injury.

## COUNT III
## PREJUDGMENT ATTACHMENT (735 ILCS 5/4-101 et seq.)

51. Plaintiff hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

52. Pursuant to 735 ILCS 5/4-101 et seq., Plaintiff is entitled to prejudgment attachment of assets held by Defendants, including any funds maintained in online marketplace accounts or financial institutions, as well as any intellectual property rights held by Defendants, including but not limited to registered trademarks, in order to secure satisfaction of a judgment.

53. Defendants have engaged in unlawful conduct, including willful patent infringement and unfair competition in violation of the Lanham Act.

54. Plaintiff is entitled to attachment pursuant to 735 ILCS 5/4-101(1), because Defendants are nonresidents of the State of Illinois and/or operate through foreign entities beyond the jurisdictional reach of this Court for collection purposes.

55. Attachment is also proper under 735 ILCS 5/4-101(5), because on information and belief, Defendants are about to fraudulently conceal, assign, or otherwise dispose of their property or effects with the intent to hinder, delay, or defraud creditors including Plaintiff.

56. Additionally, attachment is appropriate under 735 ILCS 5/4-101(8), because, on information and belief, Defendants fraudulently concealed and continue to conceal their identities and assets to avoid the jurisdiction of the Court and to frustrate enforcement of any judgment.

57. On information and belief, Defendants have used fictitious seller aliases, false registration data, and offshore bank accounts, and have operated multiple storefronts in parallel to carry out infringing sales. These tactics strongly suggest an intent to move assets out of reach and obstruct enforcement of any judgment entered in this case.

58. Plaintiff seeks the issuance of a writ of attachment directed to third-party payment processors, financial institutions, online marketplace platforms, and the U.S. Patent and Trademark Office, including but not limited to Amazon, PayPal, Walmart, eBay, Alipay, and USPTO, to restrain and preserve funds, trademark registrations, and other assets in accounts associated with the Defendants identified on Schedule A.

59. Prejudgment attachment is necessary and appropriate to ensure that any judgment rendered in this case is not rendered ineffectual due to the dissipation, concealment, or transfer of

assets derived from Defendants' infringing and deceptive conduct, including any intellectual property they hold or control.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

1) That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under, or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

   a. Making, using, offering for sale, selling and/or importing into the United States for subsequent sale or use any products that infringe upon Plaintiff's Patent; and

   b. Aiding, abetting, contributing to, or otherwise assisting anyone in infringing upon Plaintiff's Patent.

2) Entry of an Order that, upon Plaintiff's request, those with notice of the injunction, including without limitation, any websites and/or online marketplace platforms, such as Amazon, eBay, Temu, and Walmart, shall disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of goods that infringe Plaintiff's Patent.

3) That Judgment be entered against Defendants finding that they have infringed upon Plaintiff's Patent.

4) That Judgment be entered against Defendants finding that infringement of Plaintiff's Patent has been willful.

5) That Plaintiff be awarded damages for such infringement in an amount to be proven at trial, in no event less than a reasonable royalty pursuant to 35 U.S.C. § 284, together with interests and costs.

6) That Plaintiff be awarded treble damages under 35 U.S.C. § 284 for Defendants' willful infringement of Plaintiff's Patent.

7) A finding that this case is exceptional under 35 U.S.C. § 285.

8) A finding that Defendants engaged in unfair competition under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

9) That Plaintiff be awarded its reasonable attorneys' fees and costs.

10) That Plaintiff be awarded a writ of attachment pursuant to 735 ILCS 5/4-101 et seq., authorizing the restraint and preservation of Defendants' assets, including funds held in online marketplace accounts, financial institutions, and any registered trademarks or other intellectual property held by or associated with Defendants, in order to secure satisfaction of any judgment entered in this case.

11) Award any and all other relief that this Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: May 2, 2025               Respectfully submitted,

/s/ Nicholas S. Lee
Nicholas S. Lee
NSLee@dickinsonwright.com
Sameeul Haque
SHaque@dickinson-wright.com
Briana Y. Hammons
BHammons@dickinson-wright.com
Dickinson Wright PLLC
55 West Monroe Street
Suite 1200
Chicago, Illinois 60603
(312) 641-0060

*Counsel for Plaintiff, Pathway IP LLC*

## VERIFICATION

I, Sason Gabay, hereby certify as follows:

1. I am the Chief Executive Officer for Pathway IP LLC. As such, I am authorized to make this Verification on Pathway IP LLC's behalf.

2. I have read the foregoing Verified Complaint and, based on my personal knowledge and my knowledge of information reported to me by subordinates and colleagues who report to me, the factual allegations contained in the Verified Complaint are true.

3. I certify under penalty of perjury under the laws of the United States of America that the foregoing statements made by me are true and correct.

Executed in ____New York_____ on May __2__, 2025

_____
Sason Gabay
CEO
Pathway IP LLC